45 Wn.2d 527 (1954)
276 P.2d 729
In the Matter of the Estate of ELVA M. MacADAMS, Deceased.
TONI GAVIAN, by her Guardian ad Litem, Hugh Miracle, Appellant,
v.
WILLIAM J. STEINERT and WILLIAM B. MacADAMS, as Executors, et al., Respondents.[1]
No. 33006.
The Supreme Court of Washington, Department One.
November 15, 1954.
Miracle, Treadwell & Pruzan, for appellant.
Custer & Custer, for respondents.
OLSON, J.
This is an appeal from the decree in a declaratory judgment action brought by the executors to construe a will and codicil. A named beneficiary, to whom the decision was adverse, has appealed.
The trial court found the following facts. Elva M. MacAdams died May 8, 1952. Her husband, William B. MacAdams, survived her, as did her sister, Margaret I. Sanders, a mentally incompetent person. She left no children or other descendants. She executed a will in 1940 (at Seattle, Washington), and two holographic codicils to that will in 1948 and 1950, respectively (in California). All of these documents were admitted to probate, and we will refer to them as the will, the first codicil, and the second codicil. The provisions of her will which are material to this case create a valid trust of her separate property, primarily for the benefit of her sister and ultimately for her husband and her child or children, if any survived her.
The trial court ruled that the first codicil was revoked by the specific language of the second codicil. A portion of it is quoted here because counsel argue that it should be considered in the construction of the second codicil. It provided terms of the trust different from those in the will, and named eight relatives as beneficiaries of the trust estate upon its termination. It then stated:
*529 "I would like to provide a college education for the children of all my cousins allowing them each 1000 [sic] a year for the 4 year college course if so used. This will be out of the trust if in force then. I also want to provide Tony Gavian with a college education or higher musical education if she shows talent and makes this her future. If Mrs. Gavian is not able to put Tony thru high school I want her to have enough to keep her in school, but not too much so as to spoil her or make Mrs. G. feel she can retire."
It proceeded to make certain bequests of specific sums and items of personal property not material here.
The second codicil, which is the document before us for construction, is entitled: "Additions and Changes in my Will." It, too, is in the handwriting of the testatrix. It makes certain changes in the disposition of the trust estate. The quoted paragraph of the first codicil is changed to omit reference to the education of children of cousins or the source of the funds for education. The material portion of it states:
"I would like to provide for an education thru high school and music and college for Toni Gavian of Long Beach."
It then made other dispositions not material here.
The trial court decreed that the quoted provision of the second codicil is void. The conclusions of law state that this result was reached because the language is vague, and, further, because a reading of the will and codicils as an entirety
"... shows one of two things, first, that the intention of the testatrix was to the contrary, or second, that if an opposite conclusion were reached, the provision would be impossible of enforcement. The testatrix, in the paragraph immediately preceding, has just finished disposing of the entire estate and setting it up as a trust for two primary specific purposes; then, after making a provision for what happens to the corpus of the estate upon the death of the sister and the surviving spouse, she names some half a dozen or more persons in that eventuality as residuary legatees, and she then attempts to make some disposition of the property she has already disposed of for Toni Gavian. This could not be done even if the language were free from the objections urged against it."
The sufficiency of the form of the execution of the second codicil is not in issue, either under the law of California *530 where it was drawn (which is pleaded), or under the law of the state of Washington. The parties also are in agreement and submit no issue on the proposition that the law of this jurisdiction, the domicile of the testatrix, governs in the construction of this codicil. See In re Chappell's Estate, 124 Wash. 128, 131, 213 Pac. 684 (1923).
[1] We have prescribed four essential elements to the creation of a testamentary trust, (1) subject, (2) object, (3) beneficiary, and (4) an imperative command to apply the subject matter to the object for the use of the beneficiary. In re Morton's Estate, 188 Wash. 206, 208, 61 P. (2d) 1309 (1936); Lanigan v. Miles, 102 Wash. 82, 93, 172 Pac. 894 (1918).
It is the contention of the beneficiary in the case at bar that all four of these requirements are met by the language of the second codicil. Our principal concern is whether or not the fourth element is present.
[2] There is no doubt that the words of the quoted provision of the second codicil, "I would like to provide ...," are precatory words. They are words of desire, not words of command. They are the expression of a wish, rather than of a direction or imperative disposition of a portion of the estate. See Cowles v. Matthews, 197 Wash. 652, 654, 86 P. (2d) 273 (1939), and cases cited.
In the case at bar, it is argued that they are directed to the executors and trustees, and that, in such a case, words of desire become words of command clad in the language of civility. Annotation, 49 A.L.R. 31. See In re Hochbrunn's Estate, 138 Wash. 415, 418, 244 Pac. 698, 49 A.L.R. 7 (1926). However, it is evident from the will and codicils that this testatrix knew how to use imperative words. See In re King's Estate, 144 Wash. 281, 283, 257 Pac. 848 (1927). She did so in the disposition of her separate estate by the creation of a valid trust for specific purposes. See, regarding precatory words, note, 7 Wash. L. Rev. 296 (1932); 1 Page on Wills (Lifetime ed.), 199, § 91; annotation, 107 A.L.R. 896, citing previous annotations.
[3, 4] In reviewing this judgment, we must bear in mind the rule of construction expressed by statute and in our decisions, *531 that the courts will seek for and give effect to the intention of the testatrix, if it be lawful. RCW 11.12.230 [cf. Rem. Rev. Stat., § 1415]. In re Long's Estate, 190 Wash. 196, 198, 67 P. (2d) 331 (1937), and cases cited. If possible, this intent must be learned from the testamentary instrument itself. In re Torando's Estate, 38 Wn. (2d) 642, 644, 228 P. (2d) 142, 236 P. (2d) 552 (1951), and case cited. While courts will endeavor to give effect to every part of the instrument being construed, and will make a reasonable effort to reconcile two apparently inconsistent provisions, an unambiguous provision will not be controlled or modified by a doubtful or ambiguous provision. In re Thomas' Estate, 17 Wn. (2d) 674, 677, 678, 136 P. (2d) 1017, 147 A.L.R. 598 (1943), and authorities cited.
[5] If necessary, extrinsic circumstances may be considered as an aid in determining intention. In re Quick's Estate, 33 Wn. (2d) 568, 573, 206 P. (2d) 489 (1949). One of those mentioned in the cited case is the relationship of the testatrix to the beneficiary. 1 Restatement, Trusts, 77, § 25, comment b, specifies, among others, the following additional circumstances which are pertinent to this present inquiry  the imperative or precatory character of the words used, and the definiteness or indefiniteness of the property, or of the extent of the beneficiary's interest. Also, see 1 Bogert, Trusts and Trustees, 341, § 48.
It must be noted, as it reflects upon the question of intention, that the beneficiary, Toni Gavian, is not related to the testatrix. She is a daughter of a former domestic servant employed by the testatrix, but it does not appear that she is one to whom any moral obligation was owed. Also, the interest or property purportedly provided for the beneficiary is indefinite.
[6] We are unable to conclude that the testatrix intended that the words of the questioned provision be considered imperative. When we cannot do this, and her clear intention to create a trust is not made apparent by considering the other circumstances shown here, we must say that the provision is invalid. Otherwise, "`we shall find ourselves employed *532 rather in the making of wills ..., than in giving them effect, when made by others.'" Lanigan v. Miles, supra, p. 95.
Our result is further supported by the significant conclusion, reached by the trial court, that the testatrix disposed of all of her separate property by the creation of a trust. Whether or not this disposition might invalidate a specific bequest to a named legatee is not before us. It is not consistent with the indefinite and uncertain language of the questioned provision. This ambiguity, coupled with the previous disposition of her entire separate estate, reflects a desire rather than a command. Also, to sustain the questioned provision in the face of this fact, requires a conclusion that the testatrix intended her trustees to take such portion of the trust estate as they, in their discretion, might determine necessary or advisable for the purposes of the education of Miss Gavian. This, of itself, might not be fatal to the questioned provision. 1 Restatement, Trusts, 328, § 129. But the funds to accomplish its purpose necessarily would come from a source over which the trustees have no discretionary control. In the first codicil, the testatrix specifically provided that the funds for education come "out of the trust." In her second codicil, she did not. If the trustees are to execute the trust in accordance with its terms, there is no room for a discretionary expenditure such as the questioned provision would require.
The judgment is affirmed.
MALLERY, HAMLEY, and WEAVER, JJ., concur.
NOTES
[1] Reported in 276 P. (2d) 729.